IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs December 2, 2025

**STATE OF TENNESSEE v. MAURICE HARRIS**

**Appeal from the Criminal Court for Shelby County**
No. 19-06727      Jennifer Johnson Mitchell, Judge

_____

**No. W2024-01945-CCA-R3-CD**

_____

A Shelby County jury convicted the Defendant of one count of rape of a child. By consent of the parties, the trial court sentenced the Defendant as a standard offender to twenty-five years' incarceration, to be served at one hundred percent. In this direct appeal, the Defendant contends that the evidence is not sufficient to support his conviction and that the trial court erred in limiting his cross-examination of one of the prosecution witnesses. We affirm the judgment of the trial court.

**Tenn R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER, P.J. and JILL BARTEE AYERS, J., joined.

Tony N. Brayton, Assistant Public Defender-Appellate Division (on appeal); Leslie Ballin, Memphis, Tennessee (at trial), for the appellant, Maurice Harris.

Jonathan Skrmetti, Attorney General and Reporter; Ronald L. Coleman, Senior Assistant Attorney General, and Joshua R. Gilbert, Assistant Attorney General (pro hac vice); Steve Mulroy, District Attorney General; and Tanisha Johnson, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

The victim testified that, as of the time of the trial in 2024, she was nineteen years old. She was employed as a laboratory technician in a physician's office. She had one child, a son. She explained that the Defendant was her grandmother's boyfriend and that she had known him all her life.

When the victim was in third grade during the 2012-2013 school year, at eight or nine years old, her grandmother and the Defendant were living together in a house. The

victim testified that she would spend time at this house every two days.  She also testified that her grandmother threw parties at the house "a lot."

While she was at her grandmother's house before one of these parties began, the victim showed the Defendant her report card.  After the party started, and while she was in the den with her cousins, the Defendant called her into a bedroom and told her to sit down while he got some money to give her for her report card.  She sat down at the foot of the bed while the Defendant went into the bathroom.  When he returned, he sat down at the head of the bed.  The Defendant told the victim to come over to him so he could put his penis in her mouth.  The victim complied.  The Defendant also inserted his fingers into her vagina, but she complained that it hurt.  The encounter lasted a few minutes.  They then went into the bathroom where the Defendant gave the victim a towel to wipe her face.  The victim did not tell anyone about this event.

A second encounter occurred on another night while she was still in third grade.  She was lying in bed with her siblings at the same house, but she was not asleep.  The Defendant came into the bedroom and told her to come with him.  He took her into the dining room.  There, the Defendant pulled down his pants and put his penis in the victim's mouth.  The Defendant ejaculated in her mouth.  Although the victim's parents were also spending the night at the house, the victim did not tell them about the Defendant's actions at that time.

The victim told her parents about the assaults when she was in ninth grade.  The result was "chaos."  She spoke to the police about the assaults that same night.

On cross-examination, the victim acknowledged that, when she spoke with the police, she did not tell the officer about the oral sex.  She explained that she did not want to disclose that information in front of her parents.  She also acknowledged that, after these assaults, she continued to visit her grandmother's house while the Defendant was there, up until she told her parents about his conduct.

On re-direct examination, the victim explained that she protested her visits to her grandmother's house after the assaults, but her parents would not let her stay home alone and insisted that she go to her grandmother's.

The victim's mother ("Mother")[1] testified that the Defendant was her mother's boyfriend and that she had known the Defendant for fifteen or sixteen years.  She described him as a "father figure" prior to learning of the assaults.

---

[1] In order to protect the victim's identity, we identify her mother without referring to her name.

Mother stated that, when the victim was thirteen or fourteen years old, she came into Mother's bedroom late one night, complaining of nightmares and crying. She told Mother that the Defendant had touched her. Based on what the victim said, Mother and the victim's father took the victim to the police station.

Mother testified that, prior to the victim's declaration, the victim had objected to going to her grandmother's house "several times." However, Mother and the victim's father insisted that she go.

On cross-examination, Mother stated that neither she nor the victim's father were present with the police officer at the time the victim reported her allegations. She also acknowledged that she had embezzled almost $10,000 from her employer during the latter half of 2020.

The victim's grandmother ("Grandmother")[2] testified that the Defendant was her fiancé. They had been together nineteen years. They continued to live together.

On cross-examination, Grandmother explained that, in 2008, the Defendant had open heart surgery. Since that time, his health "hadn't been the same" and he had lost the ability to have an erection.

Grandmother testified about the victim's truthfulness:

[S]he's not a truthful, honest person. . . . [S]he like to have things her way. And when she can't have things her way, she cry. . . . It been a time when she lie about, you know, to stay home from school to shoot hooky or let the boy in the house. . . . She's not the type just to being honest. If she sit and lie about boys being in the house, she would lie about something else.

Lieutenant Nathan Wilbern of the Memphis Police Department testified that the victim's case was assigned to him. He arranged for a forensic interview of the victim. He also spoke with Mother, the victim's father, Grandmother, and the Defendant. Lt. Wilbern made an audio recording of the Defendant's statement, and it was played for the jury. During his statement, the Defendant denied ever having touched the victim inappropriately.

Lindsey Nails testified that, in January 2019, she worked at Healing Hearts Child Advocacy Center, a facility that, among other things, conducted forensic interviews of children. On January 28, 2019, Ms. Nails conducted a forensic interview of the victim.

---

[2] In order to protect the victim's identity, we identify her grandmother without referring to her name.

The interview was video recorded and played for the jury. During her interview, the victim stated that, while she was in the third grade, the Defendant had put his fingers into her vagina on an occasion when she had shown him her report card and also put his penis into her mouth. He put his penis into her mouth on a second occasion later that year.

Ms. Nails testified that, during the interview, she did not observe any signs that the victim had been coached.

Admitted into evidence pursuant to stipulation was a document generated on January 15, 2019, in response to the victim's report of allegations against the Defendant to Officer S. Chaney at the Raines Police Station on that date. The report contains the following narrative:

> Complainant [Mother] advised that her daughter [the victim] stated that she had been sexually assaulted by her step grandfather [the Defendant] approximately six years ago.

> [The victim] advised officer Chaney that she did not remember the exact date of the offense. She did however inform officer Chaney that she was in the [third] grade at the time of the incident. [The victim] stated that she went to visit the grandparents home one day. Upon arrival in the home, she made her way to the bedroom of [the Defendant] to speak. After entering the room he told [the victim] to sit on the bed so he could give her money for a good report card. [The victim] stated that she did as he instructed. After sitting on the bed, she advised that [the Defendant] began to pull down her pants and she resisted his attempt. [The victim] advised that he did get her pants down and he used his fingers to rub her vaginal area and also penetrated her with his fingers. [The victim] said after the assault, [the Defendant] stated that he would hurt her if she told anyone.

At the close of proof, the state elected to have the jury determine whether the Defendant committed rape of a child by placing his fingers in the victim's vagina.

After deliberating, the jury convicted the Defendant of one count of rape of a child. Following a sentencing hearing and by consent of the parties, the trial court sentenced the Defendant as a standard offender to twenty-five years of incarceration, to be served at one hundred percent. This direct appeal followed.

## ANALYSIS

**I. Sufficiency of the Evidence.** The Defendant argues that the evidence is not

sufficient to sustain his conviction because the prosecution adduced no physical evidence of the rape and because the prosecution adduced no corroborating evidence of the rape. We hold that the Defendant is not entitled to relief on this issue.

"Because a verdict of guilt removes the presumption of innocence and raises a presumption of guilt, the criminal defendant bears the burden on appeal of showing that the evidence was legally insufficient to sustain a guilty verdict." State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009) (citing State v. Evans, 838 S.W.2d 185, 191 (Tenn. 1992)). "Appellate courts evaluating the sufficiency of the convicting evidence must determine 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" State v. Wagner, 382 S.W.3d 289, 297 (Tenn. 2012) (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)); see Tenn. R. App. P. 13(e). When this court evaluates the sufficiency of the evidence on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence. State v. Davis, 354 S.W.3d 718, 729 (Tenn. 2011) (citing State v. Majors, 318 S.W.3d 850, 857 (Tenn. 2010)).

Guilt may be found beyond a reasonable doubt where there is direct evidence, circumstantial evidence, or a combination of the two. State v. Sutton, 166 S.W.3d 686, 691 (Tenn. 2005); State v. Hall, 976 S.W.2d 121, 140 (Tenn. 1998). The standard of review for sufficiency of the evidence "'is the same whether the conviction is based upon direct or circumstantial evidence.'" State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)). The jury as the trier of fact must evaluate the credibility of the witnesses, determine the weight given to witnesses' testimony, and reconcile all conflicts in the evidence. State v. Campbell, 245 S.W.3d 331, 335 (Tenn. 2008) (citing Byrge v. State, 575 S.W.2d 292, 295 (Tenn. Crim. App. 1978)). Moreover, the jury determines the weight to be given to circumstantial evidence, the inferences to be drawn from this evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence. Dorantes, 331 S.W.3d at 379 (citing State v. Rice, 184 S.W.3d 646, 662 (Tenn. 2006)). When considering the sufficiency of the evidence, this court "neither re-weighs the evidence nor substitutes its inferences for those drawn by the jury." Wagner, 382 S.W.3d at 297 (citing State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997)).

Rape of a child is defined as the unlawful sexual penetration of a victim by the accused where the victim is more than three years old but less than thirteen years old. Tenn. Code Ann. § 39-13-522(a) (2012). Sexual penetration includes an accused placing one or more of his fingers into the victim's vagina. Tenn. Code Ann. § 39-13-501(7) (2005). The victim testified that, on one occasion, the Defendant put his fingers into her vagina, hurting her. The victim had earlier described this event during her forensic interview, which was

shown to the jury. Our supreme court has determined that the testimony of a child victim, alone, is sufficient to uphold a conviction for child rape. State v. Elkins, 102 S.W.3d 578, 582-83 (Tenn. 2003); see State v. Warren Curnutt, No. M2006-00552-CCA-R3-CD, 2007 WL 1482390, at *11 (Tenn. Crim. App. May 22, 2007). Thus, neither physical evidence nor corroborating testimony is necessary to support a conviction of rape of a child. See State v. Benton, No. W2016-00323-CCA-R3-CD, 2016 WL 4706850, at *5 (Tenn. Crim. App. Sept. 6, 2016) (stating, "[t]his court has repeatedly said that the State is not required to present physical evidence to corroborate a victim's testimony [in rape of a child cases]") (collecting cases); State v. Cox, No. W2014-00800-CCA-R3-CD, 2015 WL 3796463, at *8 (Tenn. Crim. App. June 17, 2015) (rejecting defendant's attacks on child rape victim's credibility and emphasizing that "the testimony of a child victim, alone, is sufficient to uphold a conviction for child rape") (citing State v. Elkins, 102 S.W.3d 578, 582-83 (Tenn. 2003)).

In essence, the Defendant is asking this court to reweigh the evidence and assess the victim's credibility. As set forth above, it is for the jury to make these determinations, not this court. Because the evidence is sufficient to support the Defendant's conviction, he is not entitled to relief on this issue.

**II. Denial of extrinsic evidence of guilty plea.** In his second issue, the Defendant contends that the trial court committed reversible error in limiting his cross-examination of Mother. The State disagrees.

Prior to defense counsel cross-examining Mother, the trial court held a jury-out hearing in order to determine whether defense counsel would be permitted to introduce into evidence a document relating to Mother's embezzlement charge. This document from a Mississippi Circuit Court is titled "Plea of Guilty and Order of Non-Adjudication" and is dated March 5, 2024. It indicates that Mother pleaded guilty to a charge of "Embezzlement [$]5,000 to [$]10,000." The document further indicates that the court was withholding its acceptance of the guilty plea pending Mother's satisfactory performance of several conditions over the course of five years and was, instead, entering an Order of Non-Adjudication. The document provides that, upon Mother's successful completion of the enumerated conditions, "then at the request of [Mother] without further hearing, the Court will enter an Order dismissing this cause." Defense counsel argued to the trial court that Tennessee Rule of Evidence 609 provided grounds for the admission of this document. The trial court disagreed, ruling that Rule 609 did not apply to this document because it was not evidence of a conviction. We affirm the trial court's ruling.

"Generally, the admissibility of evidence rests within the trial court's sound discretion, and the appellate court does not interfere with the exercise of that discretion unless a clear abuse appears on the face of the record." State v. Franklin, 308 S.W.3d 799,

809 (Tenn. 2010) (citing State v. Lewis, 235 S.W.3d 136, 141 (Tenn. 2007)). A trial court is found to have abused its discretion when it applies "an incorrect legal standard or reaches a conclusion that is 'illogical or unreasonable and causes an injustice to the party complaining.'" Lewis, 235 S.W.3d at 141 (quoting State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006)).

Tennessee Rule of Evidence 609 provides for the impeachment of witnesses with "evidence that the witness has been convicted of a crime." Tenn. R. Evid. 609(a). This court has previously recognized that a guilty plea that is not accepted but held in abeyance pursuant to a sentence of judicial diversion is not covered by Rule 609. See State v. Tolbert, No. E1999-02326-CCA-R3-CD, 2000 WL 1172344, at *4 (Tenn. Crim. App. Aug. 18, 2000) (stating that, "[g]iven the language of [the diversion statute] we think that when a defendant is granted judicial diversion there is no conviction within the meaning of Rule 609, and thus the rule does not apply when counsel seeks to impeach a witness with a criminal prosecution that has concluded in judicial diversion"). Although the document at issue does not use the term "judicial diversion," it states on its face that Mother's guilty plea is being held in abeyance and that it has not been accepted by the court. The document contains no language indicating that it is a "conviction" within the meaning of Rule 609. Accordingly, the trial court committed no abuse of discretion when it ruled the Mississippi document inadmissible for impeachment purposes.

To the extent that the Defendant tries to claim his constitutional rights to cross-examine Mother were compromised by the trial court's proper application of Rule 609, we disagree.[3] Defense counsel asked Mother if, "[b]etween July 1st and December the 8th of 2020, did you embezzle $9,672 from your employer, First Counseling?" Mother answered, "Yes, sir." This question and answer established for the jury that Mother committed an act of dishonesty and therefore served to impeach her credibility. The Defendant is not entitled to relief on this basis.

## CONCLUSION

We affirm the trial court's judgment.

s/ **Camille R. McMullen**

CAMILLE R. MCMULLEN, JUDGE

---

[3] See U.S. Const. Amend. VI; Tenn. Cost. Art. I, § 9.